Carl **BUCHANAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 570–94, 571–94.

Court of Criminal Appeals of Texas, En Banc.

Nov. 29, 1995.

Winston E. Cochran, Jr., Houston, for appellant.

Ernest Davila, Asst. Dist. Atty., Houston and Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was charged by indictment with multiple offenses. Cause number 598811, corresponding to petition for discretionary review (PDR) number 570–94 (and court of appeals number 01–93–0209–CR), alleged separate counts of aggravated sexual assault and aggravated kidnapping, both occurring on or about May 17, 1991 against the same named complainant. Cause number 562943, corresponding to PDR number 571–94 (and court of appeals number 01–93–0210–CR), alleged aggravated assault occurring on or about April 28, 1990 against a different named complainant.[1] After a trial before the court on October 14, 1992, appellant was found guilty of the aggravated sexual assault

and aggravated kidnapping indictment allegations. The trial court also adjudicated guilt on the aggravated assault offense upon which adjudication had previously been deferred. On December 3, 1992, after reviewing a presentence investigation report and hearing testimony, the trial court assessed punishment at incarceration for terms of 10 years for the aggravated assault, and of 75 years for the aggravated sexual assault and 50 years for the aggravated kidnapping to be served consecutively to the aggravated assault term. The First Court of Appeals affirmed. *Buchanan v. State*, 881 S.W.2d 376 (Tex.App.—Houston [1st Dist.] 1994).

Appellant filed identical petitions for discretionary review of the convictions arising from both indictments. Questions 1 and 2 involve the aggravated sexual assault and aggravated kidnapping cases, while questions 3 and 4 involve the aggravated assault case. We granted review of only questions 1 and 2 in both petitions. However, since questions 1 and 2 deal solely with issues relevant to the aggravated sexual assault and aggravated kidnapping cases, we conclude that review of petition number 571–94, which involves the aggravated assault case, was improvidently granted.

### I.

### SUMMARY OF PERTINENT FACTS

The record reflects that the aggravated sexual assault and aggravated kidnapping allegations involved a domestic situation between appellant and his long-time girlfriend. The complainant's testimony indicated that they had lived together for over fifteen years. Her testimony also indicated that on May 17, 1991 appellant forced her into a car and drove her to the cemetery containing her parents' graves, and forced her to have sex; and thereafter upon driving out of the cemetery stopped the car and forced her to have sex in the back seat. Subsequently appellant drove to her mother's[2] home and let her out

---

1. Though there is some dispute about which offenses correspond to which PDR and court of appeals number, the transcripts, judgments and court of appeals correspondence clearly confirm the accuracy of the delineation of the numbers and offenses as set out above.

2. It was actually the home of her aunt. The complainant testified that her mother had been

of the car. Appellant testified that the complainant voluntarily accompanied him and consented to having sex. Over objection, the complainant also testified about an incident that had occurred a few days earlier in which appellant had lured and coerced her into a car and driven off but she had managed to jump out as it drove away. Appellant denied that there was any luring or force involved in that incident, but rather insisted that she had suddenly changed her mind about going with him and jumped out of the slowly moving car before he could stop.

## II.

### QUESTIONS FOR REVIEW

We granted review of two of appellant's questions for review. These read as follows:

1. Is an aggravated kidnapping defendant required to reintroduce at the punishment stage of trial evidence from the guilt stage which conclusively proved that he released the kidnapping victim alive and in a safe place?

2. Is the State's "open file" policy prior to trial sufficient compliance with a request under TEX.R.CRIM.EVID. 404(b) for notice of intent to use extraneous offense evidence?

## III.

### COURT OF APPEALS' DECISION

The court of appeals held that while "the undisputed evidence presented at the *guilt phase of the trial* indicate[d] that [the complainant] was released at her mother's home, presumably a safe place," the issue of safe release was not litigated at punishment, nor was the evidence adduced at the guilt phase re-offered at punishment. *Buchanan v. State*, 881 S.W.2d at 378–79. (Emphasis in original.) Accordingly, it overruled appellant's point of error claiming insufficient evidence of release in a safe place. *Id.* The court of appeals also concluded that the Rule 404(b) notice requirement was fulfilled by giving appellant access to the extraneous of-

fense evidence via the State's open file policy since such gave appellant actual knowledge of the extraneous offense evidence. *Id.* at 379–80.

## IV.

### QUESTION NUMBER ONE

■ In Question Number One, appellant asks whether "an aggravated kidnapping defendant [is] required to reintroduce at the punishment stage of trial evidence from the guilt stage which conclusively proved that he released the kidnapping victim alive and in a safe place?" This question presumes that it was conclusively established in the instant cause that the complainant was released alive and in a safe place. The court of appeals agreed that the evidence at guilt indicated that the complainant "was released at her mother's home, presumably a safe place." *Id.* at 378. However, it held that evidence of safe release "must be presented during the punishment phase." *Id.* V.T.C.A. Penal Code, § 20.04(b) makes safe release an issue upon conviction of aggravated kidnapping since it provides that such an offense is a first degree felony "unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree." Therefore, upon appellant's conviction of aggravated kidnapping, the safety or nonsafety of the site of release was an issue before the trial court.

■ There is no requirement that evidence admitted at guilt/innocence be re-offered to be considered at punishment. *Ex parte Kunkle*, 852 S.W.2d 499, 502 (Tex.Cr. App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993); *Wright v. State*, 468 S.W.2d 422, 425 (Tex.Cr.App.1971). Thus in the instant cause, the evidence about the complainant being released at her mother's home was before the trial court for consideration in assessing punishment and determining the safe release issue.

In *Williams v. State*, 851 S.W.2d 282, 286 (Tex.Cr.App.1993), we held that in the trial of an aggravated kidnapping, the accused has

---

deceased since she was about thirteen months old, so an aunt had raised her; and she consid-

ered that aunt to be her mother.

the threshold burden of production as to the issue of whether he voluntarily released the complainant alive and in a safe place, i.e. if evidence from any source does raise the issue the burden of production is met. Thereafter, the burden of persuasion shifts to the State, which must convince the factfinder that the place where the accused left the complainant was not safe; and the factfinder must find the place unsafe to a level of confidence beyond a reasonable doubt for the punishment level to be for a first degree felony. *Id.*

Though *Williams* involved a jury trial and the issue was whether an instruction on the issue of release in a safe place should have been included in the jury charge, the instant cause involving a trial before the court also concerns the issue of safe release which affects the statutory range of punishment. In *Williams,* the site of release was a cemetery, though the State produced no evidence to show that it was not safe. We concluded that the evidence was sufficient to justify an inference that the cemetery was a safe enough place. *Id.* at 287. Thus, the issue of release in a safe place was raised, whereupon it became a matter for the factfinder, i.e. in that case the jury, to determine whether the site of release was a safe place. *Id.* "The burden of persuasion being upon the State, any reasonable doubt on that issue would be resolved in appellant's favor." *Id.*

We conclude that the court of appeals erred in its treatment of appellant's claim as to the sufficiency of evidence of aggravated kidnapping based upon the evidence of release in a safe place. The court of appeals concluded that the evidence to raise the issue of safe release must be presented at punishment because "it would be unreasonable to expect our district judges to recall minute details from the guilt phase of the trial." *Buchanan v. State,* 881 S.W.2d at 378. How-

ever, as discussed above, there is no requirement that evidence admitted at guilt/innocence be re-offered to be considered at punishment. *Kunkle* and *Wright, supra.* In a footnote in *Williams,* 851 S.W.2d at 286, n. 2, we observed that "it is likely that evidence raising the issue whether the place of a victim's release was safe will often come out in the course of the State's own evidence of the circumstances of the offense itself, *at the guilt phase of trial.*" (Emphasis added.) We do not consider it to be unreasonable to expect or require the trier of fact, whether the jury or the trial court, to consider the evidence admitted at guilt/innocence when assessing punishment. Thus the answer to appellant's first question for review is that an aggravated kidnapping defendant is not required to reintroduce evidence from the guilt stage at the punishment stage of trial. Accordingly, we sustain appellant's first question for review.[3]

### V.

### QUESTION NUMBER TWO

In Question Number Two, appellant asks whether the State's "open file" policy sufficiently complies with Rule 404(b)'s requirement that in the face of a timely request reasonable notice in advance of trial be given as to intent to introduce in the State's case in chief extraneous evidence of other crimes, wrongs, or acts. The record reflects that when the State began to question the complainant about an incident with appellant which had occurred a few days prior to the incident for which appellant was on trial, appellant objected to such as being another offense which the State had failed to give the required written notice of its intention to introduce. The State responded that it did not consider such an extraneous offense but rather was attempting to show an ongoing

---

**3.** Though appellant's point of error below averred insufficient evidence "to sustain the first-degree felony conviction for aggravated kidnapping[,]" the argument thereunder clearly based such insufficiency on the issue of release in a safe place. It clearly alleged that the evidence that there was not such a release was insufficient, e.g. that "no rational finder of fact could find that [he] did not release [the complainant] in a safe place." While appellant's brief questioned and

suggested that the proper remedy for such insufficiency was remand for new trial on guilt as well as punishment, or even entry of an order of acquittal, it also insisted that "[a]t the very least" the cause should be remanded for a new punishment hearing "limited to a second-degree felony." We can not conclude that appellant's arguments for alternative remedies abrogated or detracted from his claim that there was insufficient evidence on the issue of release in a safe place.

relationship with an explanation for what happened on May 17, and pointed out that it was in the offense report which was in its file which appellant had reviewed. Appellant's attorney had previously indicated that he had reviewed the State's file totally on several occasions. The trial court overruled appellant's objection and the complainant testified about that prior incident.

The State claims that Rule 404(b) notice was not required because the testimony regarding that prior incident was elicited to show an ongoing relationship between appellant and the complainant, i.e. was "same transaction contextual evidence," and that it was therefore not within the purview of Rule 404(b) notice requirements. However, we are unable to conclude that the prior incident was "same transaction contextual evidence."

■ The complainant testified that this incident occurred two days prior to the incident for which appellant was on trial, though appellant subsequently testified that it had occurred about a week before that, i.e. around May 8 rather than May 15. This prior incident was a distinct and totally separate event from that for which appellant was on trial. The two incidents are not so intermixed or blended with one another, or connected so that they form an indivisible criminal transaction, such that full proof of one could not be given without showing the other. *See, e.g., Mayes v. State,* 816 S.W.2d 79, 86 n. 4 (Tex.Cr.App.1991). Evidence of the prior incident was certainly not necessary to the trial court's understanding of the incident for which appellant was on trial; the facts of the instant incident would have made perfectly good sense without the admission of the objected-to evidence of the prior incident. *See, e.g., Rogers v. State,* 853 S.W.2d 29, 33 (Tex. Cr.App.1993). We therefore conclude that Rule 404(b)'s notice provisions did apply to evidence of the prior incident.

■ Tex.R.Crim.Evid. 404(b) provides that evidence of other crimes, wrongs, or acts, though not admissible to prove the character of a person to show that he acted in conformity therewith, may be admissible for purposes other than character conformity "provided ... reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence...." The State insists that appellant had such requisite reasonable notice since appellant "admitted that he [had been] given access to the evidence of extraneous offenses via the State's open file."* It also adds that appellant's filing of a pretrial Motion in Limine "showed that he had actual knowledge of the extraneous offense and of the State's intent to use it."

It is undisputed that appellant made a timely written request for such Rule 404(b) notice. The transcript contains a copy of such an instrument, "Request For Notice Of Intent To Introduce Rule 404(b) Evidence." The plain language of Rule 404(b) requires upon such request that the State give notice "of intent to introduce in [its] case in chief such evidence...." We cannot conclude that the mere opening of its file containing an offense report detailing extraneous evidence satisfies the requirement of giving notice "of intent to introduce" such evidence. The mere presence of an offense report indicating the State's awareness of the existence of such evidence does not indicate an "intent to introduce" such evidence in its case in chief. As noted above, Rule 404(b) requires the State to give notice of intent to introduce such evidence "in [its] case in chief[.]" Thus the answer to appellant's second question for review is that the State's "open file" policy does not comply with Rule 404(b)'s above-discussed requirement that the State provide notice in advance of trial of its intent to introduce such extraneous evidence in its case in chief.

Accordingly, we sustain appellant's second question for review and remand the cause to the court of appeals for analysis pursuant to Tex.R.App.Pro. 81(b)(2).

## VI.

## CONCLUSION

In light of our disposition of Questions One and Two, we remand the cause involving petition number 570–94 and cause number 598811, corresponding to court of appeals number 01–93–0209–CR, to the court of appeals for actions consistent with this opinion.

Petition number 571–94, corresponding to cause number 562943 alleging aggravated assault and court of appeals number 01–93–0210–CR, is hereby dismissed.

WHITE, J., dissents to the disposition of point of error #1.

## CONCURRING AND DISSENTING OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge, concurring and dissenting.

I join the opinion of the Court as to its disposition of appellant's second question for review. An open file policy does not provide notice to the accused that the State intends to use evidence of extraneous offense(s) at trial; it merely provides notice that the State has knowledge of extraneous offenses committed by the accused. Appellant, having filed the timely request under Rule 404(b), was entitled to be informed by the State as to its intent to use such evidence as part of its case in chief.

I dissent to the Court's disposition of appellant's first question for review. Texas Penal Code § 20.04(c)—formerly § 20.04(b)—places the burden on appellant to prove, by a preponderance of the evidence, *at the punishment phase of the trial,* that he voluntarily released the complainant in a safe place, in order to reduce the offense from a first degree to a second degree felony. Section 20.04(b), in effect at the time of the offense in this matter, stated that an offense under § 20.04 is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree. Section 20.04(b), however, unlike its successor, Section 20.04(c), did not require that evidence of safe release be introduced at the punishment phase by appellant. Thus, such evidence could have been introduced at any time during the trial. However, the only evidence introduced with respect to this issue was limited testimony during the guilt/innocence phase that the complainant was released at

her mother's house, presumably, but not necessarily, a safe place. Appellant did not meet his burden of proof on the issue of safe release, as the court of appeals correctly, in my opinion, held.

## DISSENTING OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge, dissenting.

I dissent. Because I believe the Court of Appeals reached the correct result in this case, it is unnecessary to address the legal issues the majority addresses. Therefore, I would dismiss appellant's petition for discretionary review as improvidently granted.

These are the facts relevant to appellant's first ground for review as set out from the opinion of the Court of Appeals.

"In this case, appellant introduced evidence at the *guilt* phase of trial that indicated safe release. However, he introduced no evidence whatsoever on the issue during the *punishment* phase of the trial, nor was the evidence adduced at the guilt phase reoffered at the punishment phase. We hold that the evidence must be presented during the punishment phase. Such a holding is required for several practical reasons. For example, there is no guarantee that appellant will be sentenced by the same judge who presides over the guilt phase of the trial. Unless evidence of safe release is presented at the punishment phase, the sentencing judge will not have the benefit of such mitigating evidence. Also, there is the possibility that several months will pass between the trial and the sentencing. In fact, such is the situation in this case. Appellant was found guilty on October 15, 1993, but he was not sentenced until December 3, 1993.[1] Because of the passage of time and the number of cases heard by our criminal courts, it would be unreasonable to expect our district judges to recall minute details from the guilt phase of the trial." *Bu-*

---

1. The record actually reflects appellant was found guilty on October 15, 1992, and sentenced

on December 3, 1992.

*chanan v. State,* 881 S.W.2d 376, 378 (Tex. App.—Houston [1st Dist] 1994) (Emphasis in original).

The majority holds the Court of Appeals erred to decide appellant had to reintroduce at the punishment phase the evidence from the guilt phase that appellant released the victim at her mother's home. *Buchanan,* 881 S.W.2d at 378. The Court of Appeals characterized the victim's mother's home as "presumably a safe place." *Buchanan,* 881 S.W.2d at 378. The majority concludes that the evidence that appellant released the victim at her mother's home conclusively proved he released her in a safe place. However, I would hold the evidence that appellant released the victim at her mother's home, without more, failed to satisfy appellant's threshold burden to produce evidence of release in a safe place.[2] See *Williams v. State,* 851 S.W.2d 282, 286 (Tex.Cr.App.1993) (defendant has threshold burden of producing evidence of release in a safe place). From the record, I cannot tell whether the home of the victim's mother was a safe place, and I am unwilling to "presume," and the statutes do not create a presumption, that it was or that appellant's evidence "conclusively proved" it was a safe place. There is no evidence in this record that the home of the victim's mother was a safe place. Therefore, it is unnecessary to address whether appellant should have reintroduced at the punishment phase evidence from the guilt phase that appellant released the victim at her mother's home.

Assuming appellant's evidence from the guilt phase raised the issue of release in a safe place, I would hold the Court of Appeals, for the reasons it stated, properly applied this Court's decision in *Williams.* In *Williams,* this Court reiterated that the "issue of safe release is properly litigated at the punishment phase of trial." *Williams,* 851 S.W.2d at 286. Here, appellant presented no evidence at the punishment phase that raised the issue of safe release. The punishment phase occurred approximately two months after the guilt phase. The Court of Appeals correctly determined that "it would be unreasonable to expect our district judges to recall minute details from the guilt phase of the trial" especially where, as here, the punishment phase occurs some length of time after the guilt-innocence phase. *Buchanan,* 881 S.W.2d at 378.

It also should be noted appellant made no attempt to litigate the issue of safe release at either phase of his bench trial. He did not request the trial court to make any fact-finding on the issue of safe release or inform the trial court that it was an issue in the case. In other words, he did not inform the trial court that safe release was an issue at the punishment phase because of evidence introduced at the guilt-innocence phase. We should require defendants to do more than what this appellant did to satisfy their initial burden of making safe release an issue in the case. See *Williams,* 851 S.W.2d at 286–87.

With respect to appellant's second ground for review, I would hold, as the Court of Appeals did, the State's open file policy is sufficient to comply with the notice requirement of Tex.R.Crim.Evid. 404(b). The State's open file policy complies with the spirit, if not the letter, of this requirement by allowing a defendant adequately to prepare to defend against the extraneous offense evidence which is subject to the notice requirement of Rule 404(b). The majority's holding requires the State "to divulge in advance its trial strategy." See *Espinoza v. State,* 828 S.W.2d 53, 54 (Tex.App.—Houston [14th Dist.] 1991), *aff'd on other grounds, Espinosa v. State,* 853 S.W.2d 36 (Tex.Cr.App.1993).

I dissent.

---

2. In *Williams,* this Court stated the evidence that the defendant released his victim at a cemetery was sufficient to "justify an inference that the cemetery was a safe enough place." *Williams,* 851 S.W.2d at 287. I would overrule *Williams* to the extent it suggests that evidence of the place of release, standing alone, can raise an inference of release in a safe place. A defendant should be required to produce some evidence that the place of release was, in fact, safe. *Williams* would still be good law on how the issue of release in a safe place should be litigated.